IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DARIEN GUINN,

    Plaintiff,

v.

CEDARHURST LIVING, LLC, d/b/a
ADDINGTON PLACE OF PRAIRIE
VILLAGE,

    Defendant.

Case No. 18-2182-DDC-KGG

## MEMORANDUM AND ORDER

Plaintiff Darien Guinn brings this action against his former employer, defendant Cedarhurst Living, LLC d/b/a Addington Place of Prairie Village. Plaintiff asserts race discrimination, harassment, and retaliation claims against defendant under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Also, plaintiff asserts that defendant engaged in unlawful discrimination based on plaintiff's race, violating 42 U.S.C. § 1981.

Defendant has responded to plaintiff's Complaint by filing a Motion to Dismiss, Stay Proceedings, and Compel Arbitration. Doc. 9. For reasons explained below, the court denies defendant's motion.

### I.     Factual Background[1]

Plaintiff worked for defendant as a kitchen employee at defendant's assisted living center in Prairie Village, Kansas, until defendant terminated his employment in February 2017. Doc. 1

---

[1]     The parties' briefs supply the facts about plaintiff's application for employment and the agreement he entered when he applied. For purposes of this motion, the parties don't dispute the relevant factual background.

at 3 (Compl. ¶ 11). When plaintiff applied for his job in 2015, he completed an online job application with defendant's predecessor, Benton House Assisted Living and Memory Care of Prairie Village ("Benton House"). Doc. 15. That application included the following provision:

> I understand and agree that:
>
> . . .
>
> 5. The Company has adopted a Mandatory Complaint Procedure whereby all employment disputes relating to the employment relationship or termination are put into a dispute resolution procedure, which ultimately culminates in final and binding arbitration before a neutral arbitrator selected through the American Arbitration Association. This procedure is very low in cost and can be utilized quickly. I understand that it is a condition of employment to follow this Mandatory Complaint Procedure as long as it remains in effect and as modified from time to time. I understand that I am giving up my right to go to Court to have employment disputes decided by a jury.

*Id.* at 4. In 2016, Benton House sold its assisted living center to defendant. Afterward, defendant became plaintiff's employer. Defendant asserts that, by signing his application, plaintiff entered a binding arbitration agreement that requires him to submit his claims in this lawsuit to arbitration. The court considers defendant's argument, below.

## II. Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, requires that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2. Section 3 of the FAA permits the court to stay litigation in favor of arbitration. The United States Supreme Court interprets the FAA to establish "'a liberal federal policy favoring arbitration agreements.'" *Epic Sys. Corp. v. Lewis*, __ U.S. __, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The Supreme Court's holdings thus instruct that the FAA requires "liberal reading of

2

arbitration agreements." *Moses H. Cone*, 460 U.S. at 23 n.27; *see also ARW Expl. Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995) (explaining that the FAA "evinces a strong federal policy in favor of arbitration" (citing *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987))).

When an agreement contains an arbitration clause, "a presumption of arbitrability arises . . . ." *ARW Expl. Corp.*, 45 F.3d at 1462 (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). But, "because 'arbitration is a matter of contract' and the authority of an arbitrator arises only from the parties['] agreement to that forum in advance, 'a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit.'" *Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1146 (10th Cir. 2014) (quoting *AT & T Techs.*, 475 U.S. at 648–49); *see also Hicks v. Cadle Co.*, 355 F. App'x 186, 192 (10th Cir. 2009) ("[T]he FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties." (citations and internal quotation marks omitted)).

The presumption of arbitrability thus "falls away" when the parties dispute whether a valid and enforceable arbitration agreement exists. *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998) (citation omitted). A court still may compel arbitration, but "only when satisfied that the making of the agreement [to arbitrate] is not at issue." *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004) (citation and internal quotation marks omitted).

### III. Analysis

Defendant asserts that plaintiff entered a binding arbitration agreement with defendant's predecessor-in-interest, Benton House. According to defendant, this agreement requires plaintiff

3

to submit all claims arising out of his employment to arbitration, including his claims against defendant, as the successor-in-interest to Benton House.

Plaintiff responds, arguing that the court cannot compel arbitration here because no arbitration agreement exists between plaintiff and the defendant he has sued. Instead, plaintiff argues, defendant invokes an arbitration agreement he entered with Benton House. And defendant, plaintiff argues is not a party to that agreement. For reasons explained below, the court finds that defendant has failed to shoulder its burden to establish that the defendant may invoke the arbitration agreement that plaintiff entered with Benton House. For this reason, the court denies defendant's Motion to Compel Arbitration.[2]

Because plaintiff disputes whether a valid and enforceable agreement exists between the parties, "the presumption of arbitrability does not apply here." *Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1304 (10th Cir. 2017) ("'[W]hen the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away.'" (quoting *Riley Mfg. Co.*, 157 F.3d at 779)). Instead, when the parties disagree whether an arbitration agreement exists, the party moving to compel arbitration bears a burden similar to the one faced by a summary judgment movant—that is, the party trying to compel arbitration must make an initial showing that a valid arbitration agreement exists. *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012); *SmartText Corp. v. Interland, Inc.*, 296 F. Supp. 2d 1257, 1262–63 (D. Kan. 2003) (citations omitted); *Phox v. Atriums Mgmt. Co.*, 230 F. Supp. 2d 1279, 1282 (D. Kan. 2002). If the moving party carries this burden, the burden then shifts to the

---

[2] Also, plaintiff asserts a second argument in his Opposition to defendant's Motion to Compel Arbitration. This argument asserts that, even if the arbitration agreement applies to defendant as the successor-in-interest to Benton House, the agreement is illusory and unenforceable. Doc. 16 at 1, 4–8. Because the court concludes that defendant has failed to establish that it can enforce the arbitration agreement as a successor-in-interest to Benton House, the court need not reach plaintiff's second argument opposing defendant's motion.

non-moving party to show a genuine issue of material of fact about the formation of the agreement to arbitrate. *Hancock*, 701 F.3d at 1261; *SmartText Corp.*, 296 F. Supp. 2d at 1263; *Phox*, 230 F. Supp. 2d at 1282. If the non-moving party "demonstrates a genuine issue of material fact, then a trial on this issue is required." *SmartText Corp.*, 296 F. Supp. 2d at 1263 (citing 9 U.S.C. § 4 (if the making of the arbitration agreement is seriously disputed, then "the court shall proceed summarily to the trial thereof") (further citation omitted)); *see also Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014) (explaining that the FAA "calls for a *summary trial*").

To decide whether the parties have agreed to arbitrate the dispute at issue, the court applies "'ordinary state-law principles that govern the formation of contracts.'" *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see also Jacks*, 856 F.3d at 1304 (applying Oklahoma law to determine whether a party had agreed to arbitrate a dispute). Here, neither party identifies which state law governs this contract formation issue. But plaintiff cites Kansas law to support his argument that defendant cannot invoke the arbitration agreement because it is not a party to the agreement encompassing an arbitration clause. *See* Doc. 16 at 3 (citing *Anderson v. Dillard's, Inc.*, 153 P.3d 550, 553 (Kan. 2007)). Defendant's Reply never responds to plaintiff's reliance on Kansas law. Nevertheless, this choice of law issue is not pivotal because the legal principles governing contract formation—at least as they apply to the current issue here—do not vary significantly from state to state.

Many courts have recognized that ordinary contract principles may bind a nonsignatory to an arbitration agreement. *See, e.g.*, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (explaining that "traditional principles of state law allow a contract to be enforced by or

against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel,'" and so an arbitration provision may bind a nonsignatory to the agreement (quoting 21 R. Lord, *Williston on Contracts* § 57:19 (4th ed. 2001))); *Gibson v. Wal-Mart Stores Inc.*, 181 F.3d 1163, 1170 n.3 (10th Cir. 1999) (concluding that third-party beneficiaries and agents of a signatory may be bound by an arbitration agreement); *Housh v. Dinovo Invs., Inc.*, No. 02-2562-KHV, 2003 WL 1119526, at *5 (D. Kan. Mar. 7, 2003) (explaining that "[o]rdinarily, a non-party to an arbitration agreement is not bound by the agreement" but also recognizing that "[c]ourts have carved limited exceptions to this rule for third party beneficiaries to a contract which contains an arbitration clause"); *Hemphill v. Ford Motor Co.*, 206 P.3d 1, 7–8 (Kan. Ct. App. 2009) (concluding that nonsignatory may be obligated to arbitrate claims arising from an agreement containing no arbitration clause if the claims are intertwined with ones involving parties who signed a related agreement containing an arbitration agreement).

The Tenth Circuit has explained that, when a nonsignatory to an arbitration agreement also is a third-beneficiary to that agreement, "then he is able to enforce the agreement." *O'Connor v. R.F. Lafferty & Co.*, 965 F.2d 893, 901 (10th Cir. 1992). "An intent to benefit the third party must be apparent from the construction of the contract in light of all surrounding circumstances to qualify that party as a third party beneficiary." *Id.* (first citing *Mowbray v. Moseley, Hallgarten, Estabrook & Weeden, Inc.*, 795 F.2d 1111, 1115–17 (1st Cir. 1986); then citing *N. Nat. Gas Co. v. Grounds*, 666 F.2d 1279, 1287 (10th Cir. 1981)). "Thus, the key inquiry when determining whether a nonsignatory to an agreement is a third party beneficiary is the intent of the parties." *Id.* (first citing *Mowbray*, 795 F.2d at 1117; then citing *McPheeters v. McGinn, Smith & Co.*, 953 F.2d 771, 773 (2d Cir. 1992)).

Here, defendant asserts, but only in a conclusory fashion, that the parties to the arbitration agreement—plaintiff and Benton House—intended to extend that agreement to defendant as a third-party beneficiary of the agreement. Specifically, defendant asserts: "In this matter . . . as Plaintiff's employer at the time of his termination and the successor-in-interest to Plaintiff's employer at the time of his hiring, the arbitration agreement was drafted with the specific intent of binding Plaintiff's employer to the agreement to arbitrate, regardless of the entity operating as Plaintiff's employer at the time the dispute arose." Doc. 17 at 2. But defendant cites nothing to support this conclusion.

Indeed, plaintiff's employment application contains no contract language evidencing the parties' intent to benefit defendant as a third party and successor-in-interest to Benton House. For example, the application contains no assignment provision. *See, e.g.*, *Weishaar v. Wells Fargo Bank, N.A.*, No. 18-2188-HLT-GLR, 2018 WL 4189696, at *3 (D. Kan. Aug. 31, 2018) (holding that a nonsignatory could enforce an arbitration agreement when the agreement provided "that it applies to claims arising out of Plaintiff's employment that . . . Plaintiff may have against World Savings, *including its successors and assigns*" (emphasis added)); *Funderburke v. Midland Funding, LLC*, No. 12-2221-JAR-DJW, 2013 WL 394198, at *5 (D. Kan. Feb. 1, 2013) (holding that nonsignatory to an arbitration agreement containing an assignment clause could enforce the arbitration agreement because the nonsignatory was an assignee, and thus "it steps into the shoes of" the assignor who signed the arbitration agreement).

Also, the agreement recites that the "Company" has adopted a mandatory arbitration procedure. Doc. 15 at 4. But, the agreement never defines the term, "Company." And the agreement contains no language manifesting that the parties intended to define the "Company" to include any successor-in-interest or the current defendant. Without such language, the governing

7

legal standard won't permit the court to conclude that defendant is a third-party beneficiary to the arbitration agreement. *Cf. Cavlovic v. J.C. Penney Corp.*, No. 17-2042-JAR-TJJ, 2017 WL 3011711, at *7 (D. Kan. July 14, 2017) (holding that a nonsignatory could not compel arbitration when the arbitration agreement defined the parties to the agreement and the nonsignatory did not fall within that definition).

Also, defendant provides no extrinsic evidence that might permit the court to conclude that the parties intended to benefit a third party when they entered the arbitration agreement. And defendant cites no cases that have extended an arbitration provision like this one to a new signatory to the agreement. Because the record contains nothing to suggest that the parties meant to benefit third parties when they entered the arbitration agreement, the court declines to hold that defendant can enforce the provisions of the arbitration agreement that plaintiff entered with Benton House.

Indeed the language of this arbitration agreement expresses no "apparent" intent based on "the construction of the contract in light of all surrounding circumstances" to benefit defendant as a third-party beneficiary and successor-in-interest. *O'Connor v. R.F. Lafferty & Co.*, 965 F.2d 893, 901 (10th Cir. 1992). The court thus concludes that defendant has failed to carry its burden to make an initial showing that a valid arbitration agreement exists between plaintiff and defendant. *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012). And, without a valid arbitration agreement, the court cannot compel the parties to arbitrate their dispute. *See AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (citation and internal quotation marked omitted)). The court thus denies defendant's Motion to Compel Arbitration.

## IV. Conclusion

Because defendant has failed to meet its burden of making an initial showing that a valid arbitration agreement exists between the parties, the court denies defendant's Motion to Dismiss, Stay Proceedings, and Compel Arbitration (Doc. 9).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Dismiss, Stay Proceedings, and Compel Arbitration (Doc. 9) is denied.

**IT IS SO ORDERED.**

**Dated this 24th day of October, 2018, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**